UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| BETTINA SNYDER,<br>DONALD SNYDER and<br>C S INDUSTRIES, LLC,<br><br>         Plaintiffs,<br><br>v.<br><br>GLENN T. DAVIS<br>         Defendant. | Civil Action No.:<br><br>04-30058-MAP<br><br>COMPLAINT AND<br>JURY DEMAND<br><br>FILING FEE PAID:<br>RECEIPT # 305553<br>AMOUNT $ 150.00<br>BY DPTY CLK MGL<br>DATE 3/23/04 |

THE PARTIES

1.      The Plaintiff, C S Industries, LLC is a duly-organized corporation with a principal place of business at 13 Second Street, Palmer, MA ("CSI").

2.      The Plaintiff, Bettina Snyder is an individual residing at 68 Letendre Lane, Ludlow, MA.

3.      The Plaintiff, Donald Snyder is an individual residing at 68 Letendre Lane, Ludlow, MA.

4.      The Defendant Glenn Davis is a licensed attorney whose business address is 11 South Road, P.O. Box 400, Somers, Connecticut (the "Defendant").

## JURISDICTION

5. There is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## FACTS

7. On or about October 20, 1999, Bettina and Donald Snyder (collectively, the "Snyders") and their company CSI (collectively, the "Plaintiffs") were sued by their former employer in Connecticut Superior Court. A copy of this "Complaint" is attached hereto as Exhibit A. The Complaint will be referred to herein, from time to time, as the "Connecticut State Case."

8. The allegations in the Complaint grew out of Charles Snyder's decision to leave the employ of the Lectron Labs, Inc. ("Lectron") because of disagreements with his former partners. (Mr. Charles Snyder is Donald Snyder's father and Bettina Snyder's father-in-law.) At all times relevant to this Complaint, Charles Snyder was a one-third owner of Lectron. Members of his immediate family, including the Plaintiffs, had been employees of Lectron. Shortly after Charles Snyder's decision to leave Lectron, the Snyders were terminated by Lectron.

9. The Snyders -- who were at-will employees of Lectron and were not subject to non-compete or non-piracy contracts --

subsequently formed a Massachusetts company, CSI, which is engaged in a business similar to Lectron's. The Complaint alleged that the Snyders conspired with Charles Snyder to set up a competing company and assisted him in acts of self-dealing all in violation of common law and the Connecticut Unfair Trade Practices Act ("CUTPA").

10. Shortly after being served with the Complaint, the Plaintiffs retained the Defendant, Attorney Glenn Davis, to defend them against the allegations in the Complaint.

11. At all times relevant to this Complaint, the Plaintiffs requested that the Defendant inform them of all developments in their case, indicated a willingness to assist in the defense of their case, and expressed their desire to vigorously and effectively defend the allegations contained in the Complaint because they were not true.

A. *Default Judgment*

12. During the prosecution of the Connecticut State Case, on or about December 2, 1999, Lectron served CSI with a Request for Interrogatories and Production of Documents.

13. On or about January 12, 2000, Lectron also served Bettina and Donald Snyder, through their counsel (the Defendants herein) with a Request for Interrogatories and Production of Documents.

14. The Defendant forwarded the above-referenced discovery requests to the Plaintiffs and specified which requests to

respond to. However, the Defendant further informed the Plaintiffs <u>not</u> to respond to several specific requests because he planned to object to those requests.

15.    Shortly thereafter, the Plaintiffs forwarded all responsive material requested by their counsel.

16.    The Defendant failed to respond to the Discovery Request within the time provided for in the Connecticut Rules of Civil Procedure.

17.    After receiving no response from the Plaintiffs, Lectron filed a Motion for Compliance on or about January 24, 2000 and requested that default enter against CSI.

18.    On or about January 26, 2000, the Defendant, on behalf of Donald Snyder and CSI, filed a Motion for Extension of Time to Respond to Discovery, which the Connecticut trial court allowed on July 17, 2000. When it allowed the Motion, the trial court ordered Donald Snyder and CSI to respond to discovery not later than July 31, 2000.

19.    On or about July 21, 2000, Lectron filed another motion and requested that the Court issue a default against Bettina Snyder for her failure to comply with the Discovery Requests.

20.    The Defendant did not notify the Plaintiffs of the above-referenced motions nor did he advise the Plaintiffs to produce the documents which may have been responsive to Lectron's request.

21.     Instead, the Defendant attempted to file an objection to the Discovery Requests a day after the discovery was due. As a result, the Plaintiffs failed to comply with the court imposed July 31, 2000 deadline.

22.     On August 25, 2000, the Court entered a default against the Snyders and CSI for their failure to comply with the court-imposed discovery deadline.

23.     The Defendant failed to notify the Plaintiffs of the entry of default.

24.     In September 2000, the Defendant filed a motion to remove default, which was granted on or about September 15, 2000.

25.     On September 22, 2000, Lectron filed a Motion for Reconsideration wherein it sought to be heard on the Defendant's September 2000 request to remove default.

26.     In October 2000, in a hearing to set aside the default, the trial court allowed the default to be set aside but ordered the Plaintiffs to pay attorney's fees. The trial court's order with respect to removing the default was conditional on the Defendant's compliance with outstanding discovery.

27.     The Defendant failed to notify the Plaintiffs about the hearing or the fact that they needed to comply with outstanding discovery, or pay attorneys fees.

28.  On November 14, 2000, Lectron filed a Motion for Default because the Defendant had once again failed to produce documents responsive to the Discovery Request.

29.  On November 28, 2000, the trial court granted Lectron's Motion for Default Judgment.

30.  The Defendant failed to notify the Plaintiffs that judgment had been entered against them.

31.  On December 5, 2000, the Defendant met with the Plaintiffs and their corporate counsel, Daniel Karpman, Esq. in Massachusetts at the office of CSI. The purpose of the meeting was to discuss the ongoing litigation, including, but not limited to, the matter of the outstanding discovery requests.

32.  At no time, during this meeting did the Defendant inform the Plaintiffs or their corporate counsel that a default judgment had entered against them. To the contrary, the Defendant discussed the steps the Plaintiffs needed to take to be in compliance with discovery.

33.  On December 21, 2000, the Defendant filed a Motion to Set Aside the Default, which was denied by the trial court on January 8, 2001.

34.  The Plaintiffs, nor their corporate counsel, were ever informed about the above-described tortured discovery history and the resulting entry of default. The Defendant did not ask the Plaintiffs to produce any documents or furnish responses to any

of the discovery requests, after their initial responses referenced in Paragraphs 13 and 14, until after the meeting in early December with the Plaintiffs' corporate counsel (see ¶ 32 herein). The Defendant not only didn't tell the Plaintiffs' about the discovery disputes and the entry of default, he did not warn them about the consequences of non-compliance. The Defendant's failure to properly counsel his clients about their obligations to comply with valid discovery requests and to comply with court imposed guidelines was conduct which fell below the standard of a reasonable attorney practicing in the state of Connecticut.

B. *Hearing on Damages*

35.   On or about June 29, 2001, the trial court held a hearing on damages. The Defendant was wholly unprepared for the damage hearing. He failed to utilize Connecticut Practice Book § 17-34, which would have allowed the Defendant to present evidence to contradict the allegations at the hearing on damages even though a default judgment had been rendered. Section 17-34 provides if a Defendant provides notice to the Plaintiff, he/she may contest allegations in the Plaintiff's complaint, even if a default has been entered against the Defendant. The Defendant's failure to utilize the relief afforded by Section 17-34 made it impossible for the Plaintiffs herein to contest Lectron's allegations in the Connecticut state case. This conduct was the proximate cause of a judgment rendered by the Connecticut trial court adverse to the Snyders.

36.     In addition, the Defendant failed to make critical objections to the testimony proffered by Lectron, inadequately cross-examined Lectron's business valuation expert and did not present an expert to testify or to contradict or explain the testimony of Lectron's expert. The only witness the Defendant called was Bettina Snyder whose testimony was largely irrelevant and ineffectual on the issue of damages. Based on an uncontested record, the Court established the value of Lectron at $250,000.00.

37.     As a result of the Defendant's negligent representation prior to the hearing on damages and at the hearing, the trial court on December 14, 2001, issued a decision wherein it found that Bettina & Donald Snyder breached their common law duty to Lectron and misappropriated company property.

38.     The trial court awarded $235,000.00 in compensatory damages to the Plaintiffs in the Connecticut case and $40,000 in punitive damages. It also found that Snyders had violated CUTPA and awarded an additional $40,000 in punitive damages; and $20,000.00 in attorneys fees. A copy of the Decision is attached hereto as <u>Exhibit B</u>.

C.  <u>The Appeal</u>

39.     The Synders and CSI hired new counsel and filed a timely appeal.

40. The case was filed at Connecticut Appeals Court on April 12, 2002 and by order of the Connecticut Supreme Court was transferred to the Connecticut Supreme Court on July 23, 2002.

41. Oral argument was held on April 22, 2003.

42. On January 18, 2004 the Connecticut Supreme Court affirmed the major part of the trial court's decision. (It dismissed two individual plaintiffs below, finding that their claims were derivative claims. The findings relative to the plaintiffs' corporation were affirmed.) A copy of the Connecticut Supreme Court's decision is <u>Exhibit C</u> hereto.

43. The Connecticut Supreme Court recognized that the basis for the judgment below was the Snyder's "repeated failure to comply with discovery orders". As described above, those discovery orders were never disclosed to the Plaintiffs herein.

44. The Connecticut Supreme Court upheld the principle that an entry of default constitutes an admission of the allegations in the pleadings by the defendants of the truth of the facts set forth in the Complaint.

45. The Connecticut Supreme Court wrote: "The allegations in the plaintiff's complaint which are deemed to be established conclusively . . ." (<u>See</u> <u>Exhibit C</u>)

46. As a result of the failure of the Defendant herein to prevent the entry of default, the Plaintiffs herein were precluded from challenging the allegations of the Complaint.

47. By failing to utilize the procedures available under Connecticut practice to contest the allegations, even after the entry of default, the Snyders were unable to defend themselves against the allegations in the Connecticut state case.

48. The Connecticut Supreme Court announced a new rule in its decision relative to attorney's fees. However, the Connecticut Supreme Court chose not to apply the new rule to the Connecticut state case because the Defendant herein "did not oppose or otherwise take action in response to the plaintiff's request [for attorney's fees]. The Connecticut Supreme Court ruled that the Snyders should have objected but in light of Attorney Davis' failure "to interpose any objection" the Court decided not to allow the appeal on that ground.

49. The actions of Attorney Davis were far below the level of a reasonable trial lawyer in Connecticut and his negligent conduct and representations were the proximate cause of the verdict against the Snyders and CSI and the proximate cause of the Connecticut Supreme Court's affirmation.

### COUNT ONE
(Negligence)

50. The Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 49.

51. The Plaintiffs had an attorney-client relationship with the Defendant.

52. The Defendant breached or failed to exercise the standard of legal care owed to the Plaintiffs in handling the matter for which he was retained.

53. The Defendant's breach was a proximate cause of the damages suffered by the Plaintiffs.

54. As a result of the Defendant's breach, the Plaintiffs have suffered a monetary loss that would not otherwise have been incurred.

## COUNT TWO
(Breach of Contract)

55. The Plaintiffs herein incorporates the allegations contained in Paragraphs 1 through 54.

56. The Plaintiffs and Defendant had an agreement whereby the Defendant rendered professional services in exchange for a fee.

57. The Defendant breached his agreement by failing to exercise reasonable care in the exercise of his duties.

58. As a result of the Defendant's breach, the Plaintiffs have suffered monetary damages.

## COUNT THREE
(Breach of Fiduciary Duty)

59. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 59.

60. The Defendant owed the Plaintiffs a fiduciary duty.

61.   The Defendant breached his duty, which caused the Plaintiffs to suffer monetary damages.

62.   The Plaintiffs demand a jury trial on all counts so triable.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that this Court:

a. As to Count I through III, enter judgment against the Defendant for monetary damages for $335,000.00 plus interest, costs and the reimbursement of all attorney fees paid to Attorney Davis and attorney fees incurred in the appeal to the Connecticut Supreme Court and in the prosecution of this lawsuit; and

b. Order any such other and further relief as this Court deems just and proper.

Respectfully submitted,

SHATZ, SCHWARTZ AND FENTIN, P.C.

By: _____
Mark H. Bluver, Esquire
BBO #560330
1441 Main Street
Springfield, MA  01103
(413) 737-1131 Phone
(413) 736-0375 Fax

Attorneys for the Plaintiffs,
Bettina Snyder, Donald Snyder
and CS Industries, LLC

Dated:   March 23, 2004

02\906\complaint-mal.4101