RETURN DATE: MAY 25, 1999 : SUPERIOR COURT

PATRICIA MOORE, CAROL TARTANI : J.D. OF FAIRFIELD
and LECTRON LABS, INC.

      VS. : AT BRIDGEPORT

CHARLES SNYDER : MAY 5, 1999

## COMPLAINT

1. The Plaintiff, Patricia Moore, is a one-third owner in the Plaintiff, Lectron Labs, Inc.

2. The Plaintiff, Carol Tartagni, is a one-third owner in the Plaintiff, Lectron, Labs, Inc.

3. The Defendant, Charles Snyder, is a one-third shareholder in said company and, upon information and belief, is a Director and Officer of said company at all material times alleged herein.

4. The Defendant, Charles Snyder, has recently been soliciting myself and the other one-third shareholder, Carol Tartagni, to purchase our interest in the company at a rate well below that which the company is worth.

5. When Ms. Tartagni and myself indicated that we were not interested in selling the company at such a reduced rate, Mr. Snyder engaged in a pattern of abuse and self-dealing which appeared to be calculated to destroy and/or devalue the company and afford him an opportunity to compete unfairly with said company in serious breach of his fiduciary duty to the company and the other one-third shareholders in the enterprise to wit:

    a. Mr. Snyder returned a key welding machine on April 12, 1999 to the lessor against the specific instructions of the Plaintiffs and their agents, thereby depriving the company of their ability to perform certain work which it has always performed and which work it had performed profitably for some period. Mr. Snyder was untruthful in dealing with the other one-third shareholders about the return of the machine and represented that it was returned April 19, 1999, a full week following the date it was actually returned.

    b. Mr. Snyder conspired with his son, Michael Snyder, who is the operator of the welding machine referenced above to leave the company. Following Mr. Synder's decision to lay off his son, he extended insurance benefits to his son without the approval or consent of the other one-third shareholders.

c. He leased a new Lincoln automobile without prior approval (at the same time he was planning to return a key welding machine which would generate substantial revenue for the company). The Lincoln, of course, if for Mr. Snyder's use.

d. He authorized substantial amounts of overtime for his son, Michael Snyder, and his son, Donald Snyder, to the detriment of the company and other employees.

e. He purchased, on behalf of the company, a Buick Roadmaster stationwagon without approval or consent of the other one-third shareholders.

f. He obligated the company for an elaborate phone system without consulting the other one-third shareholder or obtaining their consent.

g. He continuously paid wages to his relatives which were substantially above the prevailing wage for a similar person with similar ability in a similar position without the authorization or consent of the other one-third shareholders.

h. He unilaterally increased his own wages without consent of the other one-third shareholder.

i. He abused charging privileges on an Advanta charge card and has refused to provide an accounting of the charges posted against that account.

j. He paid his relatives for sick/vacation days that they had not earned over the objection of the other one-third shareholders and without their consent.

k. He has advised agents of the other one-third shareholders that he is preparing to return tools and fixtures to customers over the objection of the other one-third shareholders.

l. Despite laying off one of his sons and knowledge that his other son is leaving the company, Mr. Snyder, has made no arrangements to replace said employees and is apparently seeking to dismantle and disable the company for his own personal gain and in order that he and/or his sons will have an unfair competitive advantage over the company.

m. He deliberately held information from the other one-third shareholders and/or their agents despite reasonable timely demand for such information.

4.  As a result of the foregoing, Plaintiff has sustained damages, including but not limited to monetary damages, attorney fees and costs of suit.

                        THE PLAINTIFF

By: _____
     TIMOTHY A. BISHOP
     Owens, Schine & Nicola, P.C.
     799 Silver Lane, P.O. Box 753
     Trumbull, CT 06611-0753
     Juris #44796   (203) 375-0600

ATTEST: A TRUE COPY

_____
MICHAEL P. PANE
DEPUTY SHERIFF, HARTFORD COUNTY
(203) 257-1277

RETURN DATE: MAY 25, 1999 : SUPERIOR COURT

PATRICIA MOORE, CAROL TARTANI : J.D. OF FAIRFIELD
and LECTRON LABS, INC.

VS. : AT BRIDGEPORT

CHARLES SNYDER : MAY 5, 1999

## STATEMENT OF AMOUNT IN DEMAND

That the amount, legal interest or property in demand is $15,000.00 or more, exclusive of interest and costs.

THE PLAINTIFFS

BY: _____
Timothy A. Bishop, Esq.
Owens, Schine & Nicola, P.C.
799 Silver Lane
Trumbull, CT 06611
Juris #44796   (203) 375-0600

ATTEST: A TRUE COPY
_____
MICHAEL P. PANE
DEPUTY SHERIFF, HARTFORD COUNTY
(203) 257-1277
861

| | |
|---|---|
| RETURN DATE: MAY 25, 1999 | : SUPERIOR COURT |
| PATRICIA MOORE, CAROL TARTAGNI and LECTRON LABS, INC. | : J.D. OF FAIRFIELD |
| VS. | : AT BRIDGEPORT |
| CHARLES SNYDER | : MAY 5, 1999 |

### NOTICE OF RIGHTS

YOU HAVE RIGHTS SPECIFIED IN CONNECTICUT GENERAL STATUTES, INCLUDING CHAPTER 903a, WHICH YOU MAY WISH TO EXERCISE CONCERNING THIS APPLICATION FOR PREJUDGMENT REMEDY. THESE RIGHTS INCLUDE THE RIGHT TO A HEARING:

(1) TO OBJECT TO THE PROPOSED PREJUDGMENT REMEDY BECAUSE YOU HAVE A DEFENSE TO OR SETOFF AGAINST THE ACTION OR A COUNTERCLAIM AGAINST THE PLAINTIFF OR BECAUSE THE AMOUNT SOUGHT IN THE APPLICATION FOR THE PREJUDGMENT REMEDY IS UNREASONABLY HIGH OR BECAUSE PAYMENT OF ANY JUDGMENT RENDERED AGAINST YOU IS COVERED BY ANY INSURANCE THAT MAY BE AVAILABLE TO YOU;

(2) TO REQUEST THAT THE PLAINTIFF POST A BOND IN ACCORDANCE WITH SECTION 52-278d OF THE GENERAL STATUTES TO SECURE YOU AGAINST ANY DAMAGES THAT MAY RESULT FROM THE PREJUDGMENT REMEDY;

(3) TO REQUEST THAT YOU BE ALLOWED TO SUBSTITUTE A BOND FOR THE PREJUDGMENT REMEDY SOUGHT;

(4) TO SHOW THAT THE PROPERTY SOUGHT TO BE SUBJECTED TO THE PREJUDGMENT REMEDY IS EXEMPT FROM SUCH A PREJUDGMENT REMEDY.

THE PLAINTIFFS

By: _____
Timothy A. Bishop
Owens, Schine & Nicola, P.C.
799 Silver Lane
Trumbull, CT 06611
Juris # 44796       375-0600

ATTEST A TRUE COPY
_____
MICHAEL P. PANE
DEPUTY SHERIFF, HARTFORD COUNTY
(203) 237-1277

EXHIBIT - B

| NO. CV99- 0362743-S | ) | SUPERIOR COURT |
| | ) | |
| PATRICIA SMITH, ET AL. | ) | JUDICIAL DISTRICT OF FAIRFIELD |
| | ) | |
| VS. | ) | AT BRIDGEPORT |
| | ) | |
| CHARLES SNYDER | ) | DECEMBER 14, 2001 |

## MEMORANDUM OF DECISION

This matter is before the court on a hearing in damages. The plaintiffs, Patricia Smith, Carol Tartagni and Lectron Labs, Inc., initially commenced this action as an application for an ex parte temporary restraining order on May 6, 1999, against the defendant, Charles Snyder. Subsequently, the plaintiffs amended their complaint and cited in the defendants CS, Industries, LLC, Donald Snyder and Bettina Snyder. In their amended complaint, the plaintiffs allege that the defendants conspired to: remove a key welding machine thereby depriving the company of certain profitable work, extend insurance benefits to relatives without the consent of the shareholders, lease an automobile without the consent of the shareholders, purchase an automobile without approval, abuse charging privileges, pay employees for sick days not earned, and establish a separate company with the intention of unfairly competing with and depriving the plaintiffs of the value of their investment. On November 28, 2000, the court, Moran, J., granted the plaintiffs' motion for default and entered judgment for the plaintiffs due to the defendants' repeated failure to comply with discovery.

The plaintiffs filed a certificate of closed pleadings on February 27, 2001, and the matter was scheduled for a hearing in damages. At the hearing in damages, the court heard evidence from the parties and ordered briefs limited to the following issue: what authority does the court have to award damages against an at will employee for establishing a competing business and soliciting the employer's clients if the employee is not under a written contract precluding solicitation and competition?

The court makes the following findings of fact. The plaintiffs protected their suppliers, customers, pricing schemes and processes, and treated them as proprietary information. The defendants kept their competing venture secret from the plaintiffs. Specifically, the defendants, while in the plaintiffs' employ: 1) started a competing business, 2) utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine, 3) acted to discourage the plaintiffs' existing customers by over quoting jobs, 4) disrupted the plaintiffs' cash flow by not sending out bills, 5) altered the plaintiffs' company records to prevent the plaintiffs' from being able to rehire employees who had been laid off, and 6) solicited the plaintiffs' customers and diverted them to the defendants' new business venture.

The plaintiffs are entitled to damages under Connecticut common law and the Connecticut Unfair Trade Practices Act.

Common Law

"The law is well settled that knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during the employment; and after the employment has ceased the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his

2

employment, for his own benefit or that of a competitor to the detriment of his former employer.... It matters not that there is no specific agreement on the part of the employee not to disclose the knowledge he has so acquired." (Citations omitted.) Allen Manufacturing Co. v. Loika, 145 Conn. 509, 514, 144 A.2d 306 (1958).

The plaintiffs claim that the defendants breached their fiduciary duty to the plaintiffs by misappropriating the plaintiffs' property, customers and business opportunities. A breach of a fiduciary duty owed to an employer "constitutes a reckless indifference to the employers rights." Blum, Shapiro & Co. v. Searles & Houser, Superior Court, judicial district of Hartford at Hartford, Docket No. 586283 (August 11, 1999 Booth, J.) (defendants' actions constituted reckless indifference and the court ruled the plaintiff was entitled to recover punitive damages and attorney's fees in addition to actual damages).

The common law principle of misappropriation, in the context of trade secrets, has been codified in the Connecticut Unfair Trade Secrets Act, General Statutes § 35-50 et seq. See Pro-Fitness, Inc. v. Plankenhorn, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 144106 (December 6, 1995, Karazin, J.) ("the common law claim for misappropriation of trade secrets has been superseded by the Uniform Trade Secrets Act. General Statutes § 35-50 et seq.") The Connecticut Uniform Trade Secrets Act provides, in pertinent part, that misappropriation means the "disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ." General Statutes § 35-51(b)(2)(B)(ii). A trade secret is defined as "information, including a formula,

3

pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." General Statutes § 35-51(d).

"[T]he trial court has broad discretion in determining whether damages are appropriate. . . ." (Citation omitted.) Elm City Cheese Co. v. Federico, 251 Conn. 59, 90, 752 A.2d 1037 (1999). General Statutes § 35-53 (b) provides in relevant part, that "if the court finds willful and malicious misappropriation, the court may award punitive damages . . . and may award reasonable attorney's fees to the prevailing party." Id. In addition to or in lieu of injunctive relief, a complainant may also recover compensatory damages. Dunsmore & Associates v. D'Alessio, Superior Court, judicial district of New Haven at New Haven, Docket No. 409906 (January 6, 2000, Levine, J.) In order to recover such damages, "the plaintiff must prove that it sustained actual loss, or that the defendant was unjustly enriched, as a result of its misappropriation." Id. "Actual loss in this context means the amount of money that the plaintiff lost from the defendant's misappropriation; it is measured by how much better off the plaintiff would have been before the defendant's misappropriation." Id.

"A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss. . . . Unjust enrichment is a very broad and flexible equitable doctrine . . . which has as its basis that it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Its three basic requirements are (1) that the [defendant was]

4

benefitted [benefited], (2) the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment. . . ." (Citations omitted; internal quotation marks omitted.) Id.

Accordingly, the court finds that the plaintiffs are entitled to the amount of $235,000.00, for compensatory damages due to the defendants' misappropriation of company property, customers and business opportunities. In addition, the court finds that the defendants' conduct was wilful and malicious and awards the plaintiffs punitive damages in the amount of $40,000.00.

## CUTPA

General Statutes § 42-110b(a) provides, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice . . . offends public policy as it has been established by statutes, the common law or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . . All three criteria do not need to be satisfied to support a finding of unfairness." Thames River Recycling, Inc. v. Gallo, 50 Conn. App. 767, 785-86, 720 A.2d 242 (1998). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Moreover, [our Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must

5

be an injury that consumers themselves could not reasonably have avoided." Calandro v. Allstate Ins. Co., 63 Conn. App. 602, 608, 778 A.2d 212 (2001).

"[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law... This remedy is not limited to mere compensatory damages." (Citations omitted; internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 509, 656 A.2d 1009 (1995). General Statutes § 42-110g(a) provides, in pertinent part, any person who suffers any ascertainable loss as a result of a violation of General Statute § 42-110b, "is entitled to have the trial court consider awarding both punitive damages . . . and attorney's fees." Id. "Awarding punitive damages and attorney's fees under CUTPA is discretionary . . . ." Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 1343 (1987). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) Id.

The plaintiffs offered credible expert testimony as to the value of Lectron Labs, Inc. as an ongoing business at the end of 1998, said value being $250,000.00 after deducting all expenses and obligations of the company. The court finds that said business equity was seriously compromised and markedly reduced by the aforesaid acts of the defendants. Said acts were directly responsible for the closing of said business and the limiting of the plaintiffs' recovery of assets to approximately $15,000.00, secured from the sale of machinery and equipment.

It is clear from the facts of this case that the defendants engaged in unfair methods of competition as evidenced by their diversion of the plaintiffs' customers and the welding

6

machine. Further, the defendants acted in a deceptive manner in establishing a competing business while feigning loyalty to the plaintiffs' company. The plaintiffs are therefore entitled to damages in the amount of $235,000.00. In addition, the court finds the defendants' conduct revealed reckless indifference to the plaintiffs' rights and awards the plaintiffs punitive damages.

Therefore, plaintiffs shall recover of the defendants $235,000.00 compensatory damages; $40,000.00 punitive damages; $40,000.00 damages for CUTPA violations; and $20,000.00 attorneys fees.

BY THE COURT,

_____
Judge David W. Skolnick