EXHIBIT - C

*****************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
*****************************************************

PATRICIA SMITH ET AL. *v.* CHARLES SNYDER ET AL.
(SC 16801)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

*Argued April 22, 2003—officially released January 27, 2004*

*Steven D. Ecker*, with whom, on the brief, were *Susan E. Zak* and *Mark H. Bluver*, pro hac vice, for the appellants (defendant CS Industries, LLC, et al.).

*Timothy A. Bishop*, for the appellees (plaintiffs).

*Opinion*

ZARELLA, J. The defendants, Bettina Snyder, Donald Snyder and CS Industries, LLC (CS Industries),[1] appeal from the judgment of the trial court[2] awarding damages to the plaintiffs, Patricia Smith,[3] Carol Tartagni and Lectron Labs, Inc. (Lectron). The defendants claim that there was insufficient evidence to support the trial court's award of damages. The defendants alternatively claim that, even if the evidence supported the award of damages, the trial court improperly determined the amount of damages and attorney's fees. We conclude that the trial court properly determined that Lectron was entitled to damages and affirm the trial court's award of attorney's fees.

The following facts and procedural history are relevant to this appeal. In October, 1999, the plaintiffs brought an action against the defendants alleging, inter alia, that the named defendant, Charles Snyder,[4] while serving as a director and officer of Lectron, breached a fiduciary duty that he owed to Lectron by engaging in a pattern of self-dealing and other abuses of his position that were designed to destroy or devalue Lectron. The plaintiffs further alleged that certain other defendants conspired with Charles Snyder in his alleged improprieties. Among other things, the plaintiffs claimed that the defendants misappropriated corporate property and that their conduct violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

Thereafter, the plaintiffs moved for a default judg-

ment on the basis of the defendants' repeated failure to comply with discovery orders. The trial court granted the plaintiffs' motion and rendered judgment in their favor on the issue of liability. Subsequently, the trial court held a hearing on damages at which three witnesses testified. Vincent Sorrentino, Smith's agent and husband, testified on behalf of the plaintiffs. David Veilleux, a certified public accountant, testified on behalf of the plaintiffs with respect to the common stock value of Lectron as of December, 1998. And Bettina Snyder, a former employee of Lectron and current employee of CS Industries, testified on behalf of the defendants.

The trial court set forth the following findings of fact in its memorandum of decision. "The plaintiffs protected their suppliers, customers, pricing schemes and processes, and treated them as proprietary information. The defendants kept [a] competing venture secret from the plaintiffs. Specifically, the defendants, while in the plaintiffs' employ: (1) started a competing business, (2) utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine, (3) [discouraged] the plaintiffs' existing customers by over-quoting jobs, (4) disrupted the plaintiffs' cash flow by not sending out bills, (5) altered the plaintiffs' company records to prevent the plaintiffs from being able to rehire employees who had been laid off, and (6) solicited the plaintiffs' customers and diverted them to the defendants' new business venture."

The trial court concluded that the plaintiffs were entitled to damages under common law, the Uniform Trade Secrets Act, General Statutes § 35-50 et seq., and CUTPA. The trial court awarded the plaintiffs the following: (1) $235,000 in compensatory damages on the basis of the defendants' violation of the common law, CUTPA and the Uniform Trade Secrets Act; (2) $40,000 in punitive damages under the Uniform Trade Secrets Act; (3) $40,000 in punitive damages under CUTPA; and (4) $20,000 in attorney's fees.

I

Prior to addressing the defendants' claims on appeal, we address the issue of whether the individual shareholder plaintiffs, Smith and Tartagni, have standing.[5] "The issue of standing implicates this court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to

attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567–68, 775 A.2d 284 (2001).

"Since at least the middle of the [nineteenth] century, it has been accepted in this country that the law should permit shareholders to sue derivatively on their corporation's behalf under appropriate conditions. . . . [I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged." (Citation omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 200, 680 A.2d 1243 (1996).

"[I]n order for a shareholder to bring a direct or personal action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation." Id., 201. It is commonly understood that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones* v. *Niagara Frontier Transportation Authority*, 836 F.2d 731, 736 (2d Cir. 1987), cert. denied, 488 U.S. 825, 109 S. Ct. 74, 102 L. Ed. 2d 50 (1988).

We conclude, therefore, that Smith and Tartagni lacked standing to bring this action in their individual capacities because the allegations in the plaintiffs' complaint, if true, demonstrate that Lectron was harmed, but that no specific shareholder sustained an injury separate and distinct from that suffered by any other shareholder or by the corporation. Accordingly, the individual claims of Smith and Tartagni must be dismissed.

II

The defendants' first claim on appeal involves the trial court's determination that the plaintiffs were entitled

to compensatory damages. The trial court's award of compensatory damages was based on its conclusion that the defendants had violated the common-law theory of misappropriation of trade secrets, which is codified in Connecticut's Uniform Trade Secrets Act, the common-law theory of misappropriation of property, and CUTPA.[6] As a threshold matter, we note that a trial court's findings of fact will be reversed only if they are clearly erroneous. E.g., *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 581, 821 A.2d 734 (2003).

The defendants claim that, to the extent that the trial court's award of damages was based on its conclusion that the defendants had violated the Uniform Trade Secrets Act, it was improper because there was insufficient evidence to establish that Lectron possessed protected information about customers, pricing schemes and processes and treated it as proprietary information.[7] Thus, the defendants contend that the information at issue did not constitute trade secrets. We disagree.

General Statutes § 35-51 (d) defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or *customer list* that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Emphasis added.)

The trial court found that Lectron protected information about its suppliers, customers, pricing schemes and processes, and treated it as proprietary information. The court concluded that the defendants improperly had appropriated this information. Our review of the transcript from the damages hearing reveals that there was sufficient evidence to support the trial court's factual findings. At the damages hearing, for example, Sorrentino specifically was asked, "[D]id you keep your customers—who your customers were and your pricing scheme, and things of that nature—did Lectron . . . treat that information as confidential?" Sorrentino responded, "Yes, we did." Sorrentino also testified that Bettina Snyder and Donald Snyder, among others, were aware that such information was confidential. Thus, there was sufficient evidence to permit the trial court to award damages under the Uniform Trade Secrets Act.

The defendants claim, however, that there was no evidence to support a finding that the defendants actually misappropriated trade secrets or nontrade secret property. We disagree. General Statutes § 35-51 (b) defines misappropriation as: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper

means; or (2) disclosure or use of a trade secret of
another without express or implied consent by a person
who (A) used improper means to acquire knowledge
of the trade secret; or (B) at the time of disclosure or
use, knew or had reason to know that his knowledge
of the trade secret was (i) derived from or through a
person who had utilized improper means to acquire it;
(ii) acquired under circumstances giving rise to a duty
to maintain its secrecy or limit its use, including but
not limited to disclosures made under section 1-210,
sections 31-40j to 31-40p, inclusive, or subsection (c)
of section 12-62; or (iii) derived from or through a per-
son who owed a duty to the person seeking relief to
maintain its secrecy or limit its use; or (C) before a
material change of his position, knew or had reason to
know that it was a trade secret and that knowledge of
it had been acquired by accident or mistake."

The trial court's determination that the defendants
misappropriated trade secrets was based on its finding
that the defendants had "solicited [Lectron's] customers
and diverted them to the defendants' new business ven-
ture [namely, CS Industries]." First, the allegations of
the plaintiffs' complaint support the trial court's factual
determination, and it is well settled that "[t]he entry of
a default constitutes an admission by the defendant of
the truth of the facts alleged in the complaint." *DeBlasio*
v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 400, 441
A.2d 838 (1982). The plaintiffs alleged in their com-
plaint, for example, that the defendants usurped Lec-
tron's customers. Second, a review of the transcript
from the hearing in damages further demonstrates that
there was sufficient evidence to support the trial court's
factual findings. There was testimony that the defen-
dants had solicited Lectron's customers and diverted
them to the defendants' new business venture.

The trial court also determined that the defendants
had violated the common-law theory of misappropria-
tion of nontrade secret property by using fraudulent
means to misappropriate Lectron's most productive and
efficient machine. Similarly, the trial court's determina-
tion is supported by the pleadings and by evidence
adduced at the hearing in damages. The plaintiffs
alleged in their complaint that several of the defendants
arranged to remove an electron beam welder from the
premises of Lectron so that it could be reinstalled at
the premises of CS Industries. There was also testimony
at the damages hearing that the defendants started a
competing business, namely, CS Industries, and utilized
fraudulent means to misappropriate the plaintiffs' most
productive and efficient machine.

The allegations contained in the plaintiffs' complaint,
which are deemed to be established conclusively, and
the evidence adduced at the damages hearing, there-
fore, demonstrate that there was ample support for the
trial court's determination that Lectron was entitled to

damages under the common law and the Uniform Trade Secrets Act.[8]

### III

The defendants also claim on appeal that, even if the trial court properly determined that the plaintiffs were entitled to damages, the amount of compensatory damages, punitive damages and attorney's fees that the trial court actually awarded was improper. We first note that a trial court is vested with "broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed . . . absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 90, 752 A.2d 1037 (1999).

### A

First, the defendants claim that the trial court's award of compensatory damages was improper. The defendants claim that the trial court improperly calculated compensatory damages because it: (1) failed to consider that the individual shareholder plaintiffs did not have a 100 percent interest in Lectron, a fact that should have served to reduce the compensatory damages award; and (2) failed to deduct the proper amount of the proceeds from the sale of various pieces of Lectron's equipment.

On the basis of our earlier conclusion that the individual shareholder plaintiffs lack standing in the present matter; see part I of this opinion; we need not address the first part of the defendants' claim. This issue is moot in light of our decision to direct the trial court to render judgment dismissing the action as to Smith and Tartagni.

In support of the second part of their claim regarding compensatory damages, the defendants assert that the trial court improperly reduced the compensatory damages award by $15,000 instead of $127,000 to reflect the proceeds of the sale of Lectron's equipment. The defendants contend that the trial court failed to consider evidence adduced at the damages hearing that Lectron received $127,000 for the sale of the equipment.

Although the defendants correctly note that Sorrentino testified at the damages hearing regarding the proceeds from the sale of Lectron's equipment, Sorrentino's testimony was vague at best. For example, when Sorrentino was questioned about the sale proceeds, he was unable to recall how much money Lectron had received with any degree of precision or certainty. Moreover, our review of the record reveals no supporting documentation regarding the sale proceeds. It was within the trial court's discretion, therefore, to weigh Sorrentino's testimony and to decide whether to rely on it in its calculation of compensatory damages. See *Bieluch* v. *Bieluch*, 199 Conn. 550, 555–56, 509 A.2d 8 (1986).

Moreover, because the defendants elected not to file a motion for articulation to illuminate further the basis for the compensatory damages award, this court can only speculate as to how and why the trial court arrived at that sum. We repeatedly have stated that it is the appellant's responsibility to provide an adequate record for review. E.g., *Walton* v. *New Hartford*, 223 Conn. 155, 164–65, 612 A.2d 1153 (1992). Thus, in light of the discretion afforded the trial court in determining the amount of damages to be awarded and in crediting or discrediting the testimony of witnesses, we conclude that the trial court's award of compensatory damages was proper. See *Bieluch* v. *Bieluch*, supra, 199 Conn. 555–56.

B

The defendants next contend that the trial court improperly awarded punitive damages under CUTPA because an award of such damages under CUTPA requires evidence that the defendants demonstrated a reckless indifference to the rights of the plaintiffs. In the present case, the trial court's finding of reckless indifference was premised on the defendants' breach of fiduciary duties.[9] The defendants claim that the only defendant that was alleged to have breached a fiduciary duty was Charles Snyder, who is no longer a party to this action. Thus, the defendants claim that the trial court improperly awarded punitive damages under CUTPA against the remaining defendants in this action because there was no direct or circumstantial evidence to establish that they demonstrated a reckless indifference to the plaintiffs' rights. We disagree.

We have stated that when "two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or in doing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. . . . Whe[n] . . . the evidence supports the conclusion that there was concerted action, each participant is . . . liable for the entire injury caused by the concerted action." (Citation omitted; internal quotation marks omitted.) *Lamb* v. *Peck*, 183 Conn. 470, 472–73, 441 A.2d 14 (1981).

In their complaint, the plaintiffs alleged that Charles Snyder breached his fiduciary duties to Lectron as an officer and director. The plaintiffs further alleged in their complaint that the remaining defendants conspired with Charles Snyder in the breach of his fiduciary duties. As we have discussed previously in this opinion, the entry of the default judgment conclusively established the facts alleged in the plaintiffs' complaint. Our decision in *Lamb* and the allegations in the plaintiffs' complaint, therefore, inform our conclusion that the remaining defendants in the present case are jointly

and severally liable for Charles Snyder's breach of his
fiduciary duties. We conclude, therefore, that the trial
court did not abuse its discretion in awarding $40,000
in punitive damages under CUTPA.

C

The defendants next claim that the trial court improp-
erly awarded $40,000 in punitive damages under the
common law because the plaintiffs had failed to plead
punitive damages, which the defendants contend is
required under Connecticut law. See *Associated Invest-
ment Co. Ltd. Partnership* v. *Williams Associates IV*,
230 Conn. 148, 161 n.16, 645 A.2d 505 (1994). The defen-
dants claim alternatively that, even if it is assumed that
an award of common-law punitive damages is merited,
the award was improper because common-law punitive
damages are limited to the plaintiffs' litigation expen-
ses, and there was no evidence in the present case
concerning the plaintiffs' litigation expenses. See
*Waterbury Petroleum Products, Inc.* v. *Canaan Oil &
Fuel Co.*, 193 Conn. 208, 236, 238, 477 A.2d 988 (1984)
(common-law punitive damages limited to expense of
litigation less taxable costs).

Our review of the trial court's memorandum of deci-
sion reveals, however, that the trial court awarded puni-
tive damages under the Uniform Trade Secrets Act
rather than under common law. The punitive damages
provision of that act, namely, General Statutes § 35-
53 (b), provides: "In any action brought pursuant to
subsection (a) of this section,[10] if the court finds *wilful
and malicious misappropriation*, the court may award
punitive damages in an amount not exceeding twice
any award made under subsection (a) and may award
reasonable attorney's fees to the prevailing party."
(Emphasis added.) The trial court specifically quoted
§ 35-53 (b) in awarding punitive damages on the basis
of its finding that the defendants' conduct was wilful
and malicious. The only logical interpretation of the trial
court's decision, therefore, is that it awarded punitive
damages under § 35-53 (b). The defendants do not dis-
pute the trial court's finding that their conduct was
wilful and malicious. We conclude, therefore, that the
trial court did not abuse its discretion in awarding
$40,000 in punitive damages under § 35-53 (b) inasmuch
as the award did not exceed twice the amount of the
award of compensatory damages. See General Statutes
§ 35-53 (b).

D

Finally, the defendants claim that the trial court
abused its discretion in awarding $20,000 in attorney's
fees. Specifically, the defendants claim that the award
of attorney's fees was improper because no evidence
was presented to establish the reasonableness, nature
and extent of the attorney's fees incurred by the plain-
tiffs during the course of the litigation. We reject the

defendants' claim under the particular circumstances of this case.

The trial court was vested with discretion to award reasonable attorney's fees under both CUTPA and the Uniform Trade Secrets Act. General Statutes § 42-110g (d) provides in relevant part that, in any action in which a person alleges damages resulting from an unfair trade practice prohibited by § 42-110b of CUTPA, "§ the court may award, to the plaintiff, in addition to the relief provided in this section, *costs and reasonable attorneys' fees* based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." (Emphasis added.) Additionally, General Statutes § 35-53 (b), one of the provisions comprising Connecticut's Uniform Trade Secrets Act, provides in relevant part: "[I]f the court finds wilful and malicious misappropriation, the court may award punitive damages in an amount not exceeding twice any award [of compensatory damages] *and may award reasonable attorney's fees* to the prevailing party." (Emphasis added.)

Notwithstanding the conclusive establishment of liability occasioned by the default of the defendants in the present case, "the plaintiff must still prove . . . how much of the judgment prayed for in the complaint he is entitled to receive."[11] (Internal quotation marks omitted.) *DeBlasio* v. *Aetna Life & Casualty Co.*, supra, 186 Conn. 401. Thus, although Lectron was entitled to a discretionary award of reasonable attorney's fees in light of the defendants' liability, it was incumbent upon Lectron to prove the amount of fees to which it was entitled upon the entry of the default judgment.

We long have held that there is an "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an *appropriate evidentiary showing.*" (Emphasis added.) *Hartford Electric Light Co.* v. *Tucker*, 183 Conn. 85, 91, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981); accord *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 121, 520 A.2d 162 (1987); see also *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680–81, 443 A.2d 486 (1982); *Stelco Industries, Inc.* v. *Cohen*, 182 Conn. 561, 567–68, 438 A.2d 759 (1980). We also have noted that "courts have a general knowledge of what would be reasonable compensation for services which are *fairly stated and described*"; (emphasis added; internal quotation marks omitted) *Shapero* v. *Mercede*, 262 Conn. 1, 9, 808 A.2d 666 (2002); and that "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) *Andrews* v. *Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996). Even though a court may employ its own general knowledge in assessing the reasonableness of a claim for attorney's fees, we also have emphasized that "no award for an attorney's fee may be made

when the evidence is insufficient." (Internal quotation marks omitted.) *Appliances, Inc.* v. *Yost,* supra, 680.

The weight of authority indicates that more than the trial court's mere general knowledge is required for an award of attorney's fees. See, e.g., *Miller* v. *Kirshner,* 225 Conn. 185, 201, 621 A.2d 1326 (1993); *Barco Auto Leasing Corp.* v. *House,* supra, 202 Conn. 120–21; *Appliances, Inc.* v. *Yost,* supra, 186 Conn. 681; *Stelco Industries, Inc.* v. *Cohen,* supra, 182 Conn. 567–68; *Lebowitz* v. *McPike,* 151 Conn. 566, 568, 201 A.2d 469 (1964). But see *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310–11, 476 A.2d 572 (1984).

For example, in *Appliances, Inc.* v. *Yost,* supra, 186 Conn. 679, the terms of a promissory note provided for an award of reasonable attorney's fees. The trial court nevertheless determined that the parties had failed to provide sufficient evidence for an award of attorney's fees. Id. We disagreed, concluding that "some evidentiary material did exist for the court to consider on that issue"; id., 681; including a supplemental brief filed by the plaintiff in which the plaintiff itemized the attorney's services. Id. We noted that "[t]hese materials, *combined with* the court's own general knowledge, could serve to provide a basis for the court to decide the right to and amount of reasonable attorney's fees." (Emphasis added; internal quotation marks omitted.) Id.

In *Piantedosi* v. *Floridia,* 186 Conn. 275, 440 A.2d 977 (1982), the defendant claimed that the trial court improperly awarded attorney's fees because it did not base its award on "factual evidence in the transcript, such as expert witness testimony." Id., 279. We rejected the defendant's contention, concluding that the trial court properly considered evidence that "twenty-five hours, at $60 per hour, had been expended on the case before trial." Id. We noted that a party need not present expert testimony regarding attorney's fees and reaffirmed our previous holdings that "courts have a general knowledge of what would be reasonable compensation for services which are *fairly stated and described.*" (Emphasis added; internal quotation marks omitted.) Id.

Moreover, in *Hartford Electric Light Co.* v. *Tucker,* supra, 183 Conn. 86–87, the defendant appealed from the judgment of the trial court awarding, inter alia, attorney's fees to the plaintiff. The defendant challenged the constitutionality of a statute that allowed for the "plaintiff's recovery of "reasonable attorney's fees and costs . . . ." (Internal quotation marks omitted.) Id., 91. We rejected the defendant's contention that the statute authorizing the plaintiff's recovery of attorney's fees was "devoid of standards," concluding that "[t]he defendant's constitutional protection from excessive awards [was] to be found in the *undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate eviden-*

*tiary showing.*" (Emphasis added.) Id.

In *Miller* v. *Kirshner*, supra, 225 Conn. 199, the defendant, Hal Kirshner, claimed that there was insufficient evidence to support an award of attorney's fees. "During the trial on financial issues, the plaintiff [Mary Miller] submitted a sworn affidavit indicating that she owed counsel $20,000 at the time of trial and attached a supporting itemization. [Kirshner] argued that [Miller] was barred from seeking attorney's fees because she had failed to produce expert testimony that the fees were reasonable. In its memorandum of decision on financial issues, the trial court awarded [Miller] $7000 in attorney's fees. The court stated that . . . [it had] a general knowledge of what would be a reasonable fee under the facts, circumstances and workload of th[e] case. It [found that] amount to be fair and reasonable.

"[On appeal, Kirshner] claim[ed] that the trial court improperly [had] awarded attorney's fees without conducting a hearing to consider evidence from an expert witness with respect to the reasonableness of the hours and monetary amount of the fees requested. [Kirshner did] not claim that he was not permitted to introduce evidence regarding the unreasonableness of the fees requested, but that [Miller had] failed to produce evidence, through an expert witness, of their reasonableness. [Kirshner] argue[d], therefore, that without a proper evidentiary foundation, an award of attorney's fees could not be made." (Internal quotation marks omitted.) Id., 199–200.

We disagreed with Kirshner and concluded that "[t]he trial court properly relied on the financial affidavit before it *and* on its general knowledge and involvement with the entire trial to ascertain a reasonable attorney's fee." (Emphasis added.) Id., 201. Thus, the trial court possessed documentary evidence regarding attorney's fees and based its award on that evidence in addition to its own general knowledge of what constituted a reasonable attorney's fee. See id.

In *Shapero* v. *Mercede*, 262 Conn. 1, 808 A.2d 666 (2002), we reviewed the Appellate Court's conclusion that there was insufficient evidence upon which to base a finding of attorney's fees because the plaintiff attorney, Paul D. Shapero, had produced no evidence to establish either his rate of compensation or the prevailing rates in the legal community. We stated that "[t]he Appellate Court did not consider, however, whether there was other evidence that could have supported the fee award." Id., 6.

Shapero testified that he had worked 100 hours on the matter. Id., 3. "[T]he referee based her finding that the appropriate hourly rate was $275, rather than $500 as requested by [Shapero], upon other subordinate findings relevant to the value of [Shapero's] services. With regard to [Shapero's] experience and reputation, the

referee noted that [t]he fact finder recognizes that the value added choice of [having Shapero] . . . handle the [client's] tax matters involved the recognition of [Shapero's] notable service as probate judge and as corporation counsel with the city of Stamford and other public boards and agencies and his lifelong service to the community and to the legal profession. [The referee] also found that [t]he arguments were complicated by the fact that a claim of environmental contamination was involved that could [have] trigger[ed] a broader base for application of tax relief, and that [t]here [was] an element of novelty to [Shapero's] presentation to the tax assessor regarding the assessment method and the list year in question . . . .

"The referee's evidentiary findings with regard to [Shapero's] experience and reputation, and the novelty and complexity of the legal issues addressed in the course of his work on behalf of [his client], ha[d] not been challenged and [were] therefore binding on this court." (Internal quotation marks omitted.) Id., 8–9.

In *Shapero*, we concluded the court's "general knowledge [of what constitutes a reasonable attorney's fee] and the referee's unchallenged findings relevant to the value of the plaintiff's services provided sufficient support for the challenged finding that $275 per hour was an appropriate measure of the value of those services." Id., 10. Thus, as in numerous other cases, there was additional evidence in *Shapero* to support the trial court's award of attorney's fees.

In *Shapero*, we distinguished cases that the Appellate Court had relied on in reversing the trial court's award of attorney's fees. See id., 6–7 n.3. We noted that "[t]he Appellate Court cite[d] several cases in support of its conclusion that [n]o award of attorney's fees . . . may be made when the evidence on which to base the award is insufficient. . . . *Although this is a correct statement of the law*, the cases cited are distinguishable . . . . Specifically, in none of the cases cited has this court or the Appellate Court ruled that competent evidence regarding the value of legal services was introduced but that it did not suffice to support a finding regarding that value. Indeed, in the first case cited by the Appellate Court [namely, *Appliances, Inc.* v. *Yost*, supra, 186 Conn. 673], we reversed the ruling of the trial court and held that *a brief in which counsel's services were itemized, when taken with the court's own general knowledge, constituted sufficient evidence from which to determine the amount of reasonable attorney's fees.* [Id., 681]. Therefore, in *Appliances, Inc.*, we required neither evidence regarding the rate ordinarily charged by the plaintiff in that case nor evidence of prevailing rates in the community. In one of the other cases cited by the Appellate Court . . . *no evidence of the value of the services whatsoever had been introduced. Lebowitz* v. *Pike*, [151 Conn. 566, 568,

201 A.2d 469 (1964)]. In another [namely, *City Savings Bank of Bridgeport* v. *Miko*, 1 Conn. App. 30, 467 A.2d 929 (1983)], the Appellate Court determined that the awarding of attorney's fees would be improper because the post-deficiency-judgment services for which the fees were sought had not yet been performed, unlike those in question in [Shapero], and might never be performed in the future. [Id., 38]. That court ruled that [p]ermitting an award of legal fees depends upon a factual finding concerning work already performed. Id. In the remaining case cited by the Appellate Court [namely, *Gruskay* v. *Simenauskas*, 107 Conn. 380, 140 A. 724 (1928)], the only evidence of the value of the attorney's services was in the form of opinion testimony provided by three witnesses in response to a hypothetical question regarding the attorney's prior experience. [Id., 384–85]. An objection to the question was made on the grounds that it did not accurately reflect the actual level of experience of the attorney seeking compensation. Id., 384. This court concluded that the trial court improperly had overruled this objection . . . and held that [w]ith the hypothetical question excluded, there was *no sufficient evidence before the court upon which to predicate a conclusion regarding the value of the services*. Id., 387. [In *Shapero* . . . there [was] such evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *Shapero* v. *Mercede*, supra, 262 Conn. 6–7 n.3.

Thus, as our case law demonstrates, to support an award of attorney's fees, there must be a clearly stated and described factual predicate for the fees sought, apart from the trial court's general knowledge of what constitutes a reasonable fee. Although we have been careful not to limit the contours of what particular factual showing may suffice, our case law demonstrates that a threshold evidentiary showing is a prerequisite to an award of attorney's fees.[12]

Notwithstanding the existence of numerous cases establishing this evidentiary burden, some confusion exists in our case law regarding the nature and extent of this evidentiary burden. See *Resurreccion* v. *Normandy Heights, LLC*, 76 Conn. App. 642, 650, 820 A.2d 1116 (acknowledging confusion relating to evidentiary burdens associated with awards of attorney's fees), cert. denied, 264 Conn. 917, 826 A.2d 1159 (2003).

The dissent relies on our holding in *Bizzoco* v. *Chintz*, supra, 193 Conn. 304, to support its conclusion that the trial court's general knowledge of the file, per se, is sufficient for an award of attorney's fees. In *Bizzoco*, the defendant, Leon Chinitz, appealed from the judgment of the trial court awarding the plaintiff, Elizabeth Bizzoco, attorney's fees. See id., 306–307. The trial court awarded Bizzoco attorney's fees pursuant to the explicit provisions of a promissory note authorizing an award of reasonable fees. Id., 310. Inasmuch as Bizzoco had

offered no additional evidence regarding attorney's fees at trial apart from the terms of the promissory note, Chinitz claimed that the evidence was insufficient to sustain an award of attorney's fees. See id. We disagreed with Chinitz and held that "courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." Id. We noted that "the trial court knew that [Bizzoco's] counsel had taken a lengthy deposition, had engaged in a two-day trial, and had prepared a post-trial brief." Id., 310–11. We thus concluded that "[t]he [trial] court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. Th[e] record was sufficient to support the award made by the court." Id., 311.

We acknowledge that the dissent's interpretation of our holding in *Bizzoco*, namely, that the trial court's general knowledge of the reasonableness of the attorney's fees as well as the court's access to the file and knowledge of the proceedings before it was alone sufficient to warrant an award of attorney's fees, is a reasonable interpretation of that case. Nevertheless, we believe, on the basis of the weight and persuasiveness of our case law on this issue, decided both before and after *Bizzoco*, that the trial court's general knowledge of the file in a particular case, by itself, is an insufficient foundation on which to base an award of attorney's fees. Our adherence to the principle set forth in *Bizzoco* would require us to read the "fairly stated and described" language out of our long-standing precedent. (Internal quotation marks omitted.) *Shapero* v. *Mercede*, supra, 262 Conn. 9. We decline to do so. Furthermore, we note that, in support of our holding in *Bizzoco*, we cited as *Appliances, Inc.*, and *Piantedosi*; *Bizzoco* v. *Chintz*, supra, 193 Conn. 310; two cases that clearly emphasize the necessity of having an evidentiary foundation, independent of the trial court's general knowledge, upon which to base an award of attorney's fees. See *Appliances, Inc.* v. *Yost*, supra, 186 Conn. 681; *Piantedosi* v. *Floridia*, supra, 186 Conn. 279.

Accordingly, when a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered.[13] Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time.[14]

Our holding today does not limit the trial court's ability to assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like. As we recognized

in *Piantedosi*, "[t]he value [of reasonable attorney's fees] is based upon many considerations." (Internal quotation marks omitted.) *Piantedosi* v. *Floridia*, supra, 186 Conn. 279, quoting *Hoenig* v. *Lubetkin*, 137 Conn. 516, 524, 79 A.2d 278 (1951).

In addition, as a matter of good policy, our holding today establishes a paradigm within which all parties must act when pursuing a claim for attorney's fees. Perhaps, even more importantly, our holding eliminates the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees. Parties must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested.

Under the circumstances of this case, however, we affirm the trial court's award of $20,000. We reach this conclusion because the defendants did not oppose or otherwise take any action in response to the plaintiffs' request for $25,000 in fees in their post-damages hearing brief.[15] Although the proponent bears the burden of furnishing evidence of attorney's fees at the appropriate time, once the plaintiffs in this case did make such a request, the defendants should have objected or at least responded to that request. Had the defendants demonstrated any interest in objecting to the plaintiffs' request for attorney's fees, the trial court would have been obligated to grant the defendants an opportunity to be heard. See *Barco Auto Leasing Corp.* v. *House*, supra, 202 Conn. 121; footnote 14 of this opinion. Accordingly, although a bare request for attorney's fees, without more, ordinarily would not suffice under the clarifying rule we announce today, we conclude that a reversal of the award in the present case is not justified in light of the defendants' failure, prior to this appeal, to interpose *any objection whatsoever* to the plaintiffs' request for attorney's fees. In other words, the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request.[16]

The judgment is reversed with respect to the trial court's award of damages and attorney's fees to the plaintiffs Patricia Smith and Carol Tartagni and the case is remanded to the trial court with direction to render judgment dismissing the action as to those two plaintiffs. The judgment is otherwise affirmed.

In this opinion SULLIVAN, C. J., and NORCOTT and PALMER, Js., concurred.

[1] We note that the operative complaint in the present action also named Charles Snyder, Advanced Vacuum Resources, Inc., and Gary LaChapelle as defendants. At the damages hearing, however, the plaintiffs proceeded against only Bettina Snyder, Donald Snyder and CS Industries.. We refer to Bettina Snyder, Donald Snyder and CS Industries as the defendants throughout this opinion.

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] We note that the operative complaint and certain other court documents refer to Patricia Smith as Patricia Moore. For ease of reference, we refer to her as Patricia Smith.

[4] See footnote 1 of this opinion.

[5] We raise this issue of standing sua sponte as it implicates our subject matter jurisdiction. See, e.g., *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 498 n.4, 467 A.2d 674 (1983).

[6] We note that "[t]he entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint." *DeBlasio* v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 400, 441 A.2d 838 (1982). Thus, the defendants cannot challenge the determination of liability in the present case because liability was deemed to be established conclusively. Accordingly, our review of the defendants' claims is limited to whether the trial court properly awarded damages and whether the amount of damages awarded was proper.

[7] We note that the plaintiffs did not allege in their complaint that the defendants had violated the Uniform Trade Secrets Act. The defendants do not claim on appeal, however, that the trial court's award of damages was improper inasmuch as the plaintiffs failed to allege a violation of the Uniform Trade Secrets Act in their complaint. See Practice Book § 10-3.

[8] We note that the defendants' only challenge in connection with the trial court's award of damages under CUTPA is to its award of punitive damages, which we discuss in part III of this opinion.

[9] The trial court cited *Blum, Shapiro & Co.* v. *Searles & Houser, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-99-0586283-S (August 11, 1999), for the proposition that a breach of fiduciary duties may constitute reckless indifference.

[10] Subsection (a) of § 35-53 authorizes an award of damages for the "misappropriation" of trade secrets as described in subsection (b) of § 35-51.

[11] At the very least, a default judgment entitles the plaintiff to nominal damages. *DeBlasio* v. *Aetna Life & Casualty Co.*, supra, 186 Conn. 401.

[12] In *Lebowitz* v. *McPike*, supra, 151 Conn. 567-68, we held that the plaintiff, who had brought an action to collect on a note executed by the defendants, was not entitled to attorney's fees, after a trial on the issues, despite a term in the note providing for such fees. We concluded that "[t]he judgment did not include any allowance for attorneys' fees, *since no evidence was introduced concerning them.*" (Emphasis added.) Id., 568.

[13] Of course, courts must enforce statutory limits on attorney's fees; e.g., General Statutes § 42-150aa (b); and recognize self-executing terms of contractual provisions that call for an award of a set percentage of attorney's fees upon the occurrence of a certain event. Cf. *Stelco Industries, Inc.* v. *Cohen*, supra, 182 Conn. 567-68.

[14] We have recognized the right of parties, at trial, to litigate fully the reasonableness of the fees requested. See *Barco Auto Leasing Corp.* v. *House*, supra, 202 Conn. 121. In *Barco Auto Leasing Corp.*, the defendants sought to introduce into evidence affidavits in support of their request for attorney's fees. Id. The plaintiff objected to the admission of one affidavit and claimed that the defendants were required to offer expert testimony to establish the value of reasonable fees. Id. The trial court did not allow the admission of the affidavits in evidence but, instead, included them in the case file. Id. Thereafter, the court directed the parties to raise any claims or objections to the award of attorney's fees in their briefs. Id. Upon these facts, we held that the court "denied the [party against whom attorney's fees were sought] the undisputed right to litigate fully the reasonableness of the attorney's fees sought . . . ." Id.

We note that our conclusion in *Barco Auto Leasing Corp.*, namely, that the trial court improperly denied the party against whom attorney's fees were sought the opportunity to litigate fully the issue, was premised upon factual circumstances that differ from those in the present case. In *Barco Auto Leasing Corp.*, the party against whom attorney's fees were sought affirmatively objected to the submission of evidence in support of the request for attorney's fees. Id. In the present case, however, upon notice of the plaintiffs' request for attorney's fees, the defendants did not object or otherwise respond to that request. Accordingly, the trial court in the present case did not deny the defendants any opportunity to litigate fully the issue of attorney's fees.

[15] See footnote 14 of this opinion.

[16] We underscore the fact that the defendants do not challenge the reason-ableness of the amount that the trial court awarded in attorney's fees.